IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

HERITAGE EQUITY GROUP 401(K) )
SAVINGS PLAN and MAX DULL, )
Trustee, )
of the HERITAGE EQUITY GROUP )
401(K) SAVINGS PLAN, )
)
    Plaintiffs, )
)
v. ) NO. 3:07-01001
) JUDGE HAYNES
CROSSLIN SUPPLY CO., INC. PROFIT )
SHARING/SAVINGS PLAN, and )
GREENPEACE, INC. 401(K) SAVINGS )
PLAN, )
)
    Defendants. )

## **MEMORANDUM**

Plaintiffs, Heritage Equity Group 401(k) Savings Plan and Max Dull, Trustee, of the Heritage Equity Group 401(k) Savings Plan, filed this action in state court against the Defendants Crosslin Supply Co., Inc. Profit Sharing/Savings Plan, and Greenpeace, Inc. 401(k) Savings Plan. Defendants removed this action to federal court on the basis of Employment Retirement Income Security Act ("ERISA") federal preemption. In their amended complaint, Plaintiffs assert state law claims for unjust enrichment as well as a claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Plaintiffs' claims arise from the alleged fraudulent transfer of retirement plan assets from their account to the Defendants by third parties, Barry Stokes and 1Point Solutions, LLC, who managed the parties' retirement assets. In essence, Plaintiffs seek to recover the funds they deposited with Stokes that were used to pay off earlier victims of Stokes' Ponzi scheme.

Before the Court is Defendants' motion to dismiss for failure to state a claim (Docket Entry No. 41). The motion to dismiss contends, in sum, that Plaintiffs' unjust enrichment claims are preempted by ERISA, 29 U.S.C. § 1111 et seq. In addition, Defendants argue that Plaintiffs have failed to allege (and are unable to allege) that the Defendants "knowingly participated" in any breach of fiduciary duty to the Heritage Plan, and therefore Plaintiffs' ERISA claim fails.

In response, Plaintiffs assert, in essence, that ERISA does not preempt their unjust enrichment claims because any relationship to ERISA here is merely coincidental, and Plaintiffs merely seek to recover assets wrongfully transferred to the Defendants, irrespective of the parties' status as ERISA benefit plans. Plaintiffs alternatively contend that they have pled all the necessary elements for their ERISA claim, as Defendants had "constructive knowledge" that the assets transfer by Stokes was unlawful and a breach of the trust. Plaintiffs assert that pleading constructive knowledge is sufficient for the requirements of an ERISA claim.

For the reasons set forth below, the Court concludes that Plaintiffs' unjust enrichment claims are preempted by ERISA. Although Defendants are not fiduciaries under ERISA, the United States Supreme Court has interpreted the statute to apply to situations such as those presented here. Additionally, the Court concludes that Plaintiffs have stated a viable cause of action under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Although discovery may bear out a different result, Plaintiffs' amended complaint suggests constructive knowledge of the fraudulent conveyance of assets by Stokes and 1Point Solutions. As such, Defendants' motion to dismiss should be granted in part and denied in part.

## I. REVIEW OF THE COMPLAINT

In 2005, Plaintiffs engaged Barry Stokes and 1Point Solutions, LLC to provide services,

namely to invest employee benefit plan assets and provide administrative services to the Heritage Equity Group 401(k) Savings Plan (the "Heritage Plan"). (Docket Entry No. 29, Amended Complaint, at ¶ 5). The Heritage Plan entrusted approximately $6.6 million to Stokes and 1Point Solutions. Id. at ¶ 7. After transferring those assets to a certain bank account, on May 31, 2005 and June 2, 2005, Stokes then transferred, without the Plaintiffs' knowledge or consent, $2,241,695.62 and $56,042.39, respectively, from that account to the Crosslin Supply Co., Inc. Profit Sharing/Savings Plan (the "Crosslin Plan"). Id. at ¶ 11.

In January 2003, the Crosslin Plan had begun to utilize the services of Stokes and 1Point Solutions, but later decided to terminate their relationship when the Crosslin Plan's auditors learned in October 2004 that Stokes' handling of its assets was legally improper and negligent. The auditors advised Crosslin Plan that Stokes was improperly commingling its assets with those of other clients, that 1Point did not reconcile or retain brokerage statements reflecting its clients' assets, that 1Point was unable to properly prepare simple federal forms that the Crosslin Plan was required to file, and that 1Point had no insurance or bonding protecting the Crosslin Plan's assets. Id. at ¶ 12.

The Crosslin Plan later instructed Stokes as to where its assets should be transferred after they were liquidated, but Stokes failed to transfer the Crosslin Plan's assets as instructed. Id. at ¶¶ 13-14. The Crosslin Plan's counsel therefore began an extended campaign to get Stokes to transfer money to the Crosslin Plan. Id. at ¶ 14. In letters to various authorities, the Crosslin Plan's counsel complained of 1Point Solutions's misconduct and the possible embezzlement of the Crosslin Plan's assets. Id. Once Stokes became aware of the pending deposit of the Heritage Plan's funds in May 2005, however, he advised Crosslin Plan that he would transfer assets to the

Crosslin Plan's new custodian on May 31, 2005, using the Heritage Plan's funds to do so. Id. at ¶ 15.

The Greenpeace, Inc. 401(k) Savings Plan (the "Greenpeace Plan") experienced similar dealings with Stokes and 1Point Solutions. Id. at ¶ 16. After entrusting employee benefit plan assets to Stokes and 1Point Solutions in February 2003, the Greenpeace Plan decided to terminate that relationship when it learned in February 2005 that 1Point Solutions had been commingling Greenpeace Plan assets with those of other plans. Id. The Greenpeace Plan also encountered significant delays and difficulties in attempting to get Stokes to return its plan assets. Id. In fact, Stokes had already stolen the Greenpeace Plan's money and he was only able to transfer money to the Greenpeace Plan after Plaintiffs transferred their own assets to Stokes. Id. at ¶ 17. On May 31, 2005, without Plaintiffs' knowledge or authorization, Stokes fraudulently transferred $1,648,702.07 of Plaintiffs' funds to the Greenpeace Plan. Id. Plaintiffs further allege that by the time Defendants received Plaintiffs' assets in May and June of 2005, they were "on clear notice that something was very wrong with the operations of 1Point Solutions." Id. at ¶ 18.

The money the Defendants received from 1Point Solutions exceeded the amounts the Defendants originally transferred to 1Point Solutions, and Plaintiffs contend that this amount was a fictitious profit paid with Heritage Plan assets. Id. at ¶ 19. In the fall of 2005, Plaintiffs learned that the money the Heritage Plan had entrusted to Stokes had disappeared and that Stokes had been fraudulently concealing his use of Heritage Plan assets for his own purposes. Id. at ¶ 20. Plaintiffs' action is to recover the Heritage Plan funds that Plaintiffs contend Stokes transferred to Defendants. Id. at ¶ 22. In their amended complaint, Plaintiffs assert two claims of

unjust enrichment and violations of ERISA § 502(a)(3).

## II. CONCLUSIONS OF LAW

The standard for resolving a motion to dismiss is that a complaint need only allege facts that give rise to "a right to relief beyond the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 444, 127 S.Ct. 1955, 1965 (2007). Consideration of a motion to dismiss requires the Court to accept the complaint's factual allegations as true and to construe the complaint liberally in favor of Plaintiff. Perry v. Am. Tobacco Co., Inc., 324 F.3d 845, 848 (6th Cir. 2003). Despite such liberal construction, a court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (internal quotation omitted). Indeed, "it is not...proper to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the...laws in ways that have not been alleged." Assoc. Gen. Contractors v. Cal. State Counsel of Carpenters, 459 U.S. 519, 526 (1983). Moreover, to survive a motion to dismiss under Rule 12(b)(6), "the complaint must contain 'either direct or inferential allegations respecting all the material elements'" of the claim. Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).

### A. ERISA Preemption

Defendants argue that ERISA preempts Plaintiffs' unjust enrichment claim. The Supreme Court has observed that ERISA is "virtually unique with respect to federal statutes in that Congress expressed its clear intent that the federal courts exercise exclusive jurisdiction over claims arising under funds or plans regulated by the ERISA statute." Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1 (1983) (emphasis added). As the Supreme

Court observed:

> The statute further states that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary," <u>except for actions by a participant or beneficiary to recover benefits due, to enforce rights under the terms of a plan, or to clarify rights to future benefits, over which state courts have concurrent jurisdiction. § 502(e)(1), 29 U.S.C. § 1132(e)(1).</u> In addition, ERISA's legislative history indicates that, in light of the act's virtually unique preemption provision, see § 514, 28 U.S.C. § 1144, "a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." 120 Cong.Rec. 29,942 (1974) (remarks of Sen. Javits).

Id. at 24, n.26 (citation omitted and emphasis added).

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to an employee benefit plan." 29 U.S.C. §1144(a). "State law" is defined to include "all laws, decisions, rules, regulations or other state action having the effect of law." 29 U.S.C. §1144(c)(1). Preemption under ERISA is "deliberately expansive." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987). Yet, ERISA's preemption provisions are not comprehensive. Marks v. Newport Credit Group, Inc., 342 F.3d 444, 453 (6th Cir. 2003). "It is not the label placed on the state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." Cromwell v. Equicor-Equitable HCA Corp., 922 F.2d 1272, 1276 (6th Cir. 1991).

The Supreme Court has repeatedly held that "[t]he detailed provisions of [ERISA] § 502(a) set forth a comprehensive civil enforcement scheme" and that "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." Dedeaux, 481 U.S. at 54.

"Therefore, <u>any state-law cause of action that duplicates, supplements or supplants the ERISA civil enforcement remedy</u> conflicts with the clear congressional intent to make the ERISA remedy exclusive and <u>is therefore pre-empted.</u>" <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 209 (2004) (emphasis added); see also <u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133, 143-45 (1990).

> Section 502(a)(3) of ERISA provides that "[a] civil action may be brought –
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan;

29 U.S.C. § 1132(a)(3). Additionally, there are few limits as to who can be named as a defendant in an action under section 502(a)(3). <u>Harris Trust and Savings Bank v. Salomon Smith Barney Inc.</u>, 530 U.S. 238, 246 (2000) ("§ 502(a)(3) admits of no limit . . . on the universe of possible defendants. Indeed, § 502(a)(3) makes no mention at all of which parties may be proper defendants – the focus, instead, is on redressing the '*act or practice* which violates any provision of [ERISA Title I].'") (emphasis in original).

In <u>Harris Trust</u>, the Supreme Court held that a plan fiduciary could bring a claim against a non-fiduciary under ERISA § 502(a)(3) where the claim seeks a remedy for any "act or practice which violates any provision of this title or the terms of the plan." The case involved am action by the fiduciaries of a plan to obtain equitable relief to correct a violation of ERISA's "prohibited transaction" rules set out in section 406 of ERISA, 29 U.S.C. § 1106. The defendant in <u>Harris Trust</u> provided broker-dealer services to the plan, and the plan had invested in properties offered for sale by the defendant broker-dealer. The Supreme Court found that fiduciaries or plan

Case 3:07-cv-01001    Document 52    Filed 06/11/09    Page 7 of 13 PageID #: 427

beneficiaries could maintain an ERISA action against a non-fiduciary third party ("other person") who knowingly participates in a fiduciary violation. Harris Trust, 530 U.S. at 248-49.

Additionally, the Supreme Court analogized actions against non-fiduciary third parties under ERISA to the common law of trusts:

> The common law of trusts, which offers a "starting point for analysis [of ERISA] ... [unless] it is inconsistent with the language of the statute, its structure, or its purposes," Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 447, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (internal quotation marks omitted), plainly countenances the sort of relief sought by petitioners against Salomon here. . . . [I]t has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty. The trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom. As we long ago explained in the analogous situation of property obtained by fraud:
>
>> "Whenever the legal title to property is obtained through means or under circumstances 'which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right and takes the property relieved from the trust.'" Moore v. Crawford, 130 U.S. 122, 128, 9 S.Ct. 447, 32 L.Ed. 878 (1889) (quoting 2 J. Pomeroy, Equity Jurisprudence § 1053, pp. 628-629 (1886)).

Harris Trust, 530 U.S. at 250-51 (citations omitted).

Thus, a state law claim for unjust enrichment against a non-fiduciary third-party for equitable remedies, particularly a constructive trust, such as the one brought by Plaintiffs here, has essentially been found within the "comprehensive civil enforcement scheme" of ERISA by

-8-

the Supreme Court. Subsequent decisions by the Sixth Circuit have categorized the claims made by Plaintiffs here as appropriate under ERISA § 502(a)(3), further supporting preemption. McDannold v. Star Bank, N.A., 261 F.3d 478, 486 (6th Cir. 2001); Pfahler v. National Latex Products Co., 517 F.3d 816, 834-35 (6th Cir. 2007). McDannold emphasized that actions under § 502(a)(3) were confined to "appropriate equitable relief," such as "restitution of wrongfully obtained plan assets or profits." Id. at 486. The Sixth Circuit also noted that the ERISA enforcement scheme excluded "legal relief," and that the rationale of Harris Trust did not limit possible defendants only to parties-in-interest. Id. Because the Plaintiffs's state law claim for unjust enrichment would "duplicate[], supplement[] or supplant[] the ERISA civil enforcement remedy" of § 502(a)(3), the state law claim is preempted. Davila, 542 U.S. at 209.

Plaintiffs citations to As You Sow v. AIG Fin. Advisors, Inc., No. 3:06-cv-01171, and Colbert & Winstead, PC 401(k) Plan v. AIG Fin. Advisors, Inc., No. 3:07-cv-01117, are also unavailing. In those actions, the plaintiffs' claims were not preempted by ERISA because the claims there involved state securities law claims that are expressly exempt from ERISA preemption. Additionally, the equitable relief sought here falls squarely within the ERISA enforcement scheme as interpreted by Harris Trust and McDannold, whereas the state law claims in those actions focused on legal damages for conversion and negligent supervision. Here, however, the Plaintiffs seek disgorgement of the actual plan assets, namely "funds or plans regulated by the ERISA statute." Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1 (1983). More recent Sixth Circuit decisions give credence to the legal/equitable distinction regarding ERISA preemption issues. See Penny/Ohlmann/Nieman, Inc. V. Miami Valley Pension Corp., 399 F.3d 692, 702 (2005) (noting the preemption distinction between

actions seeking to recover plan benefits and those actions merely referencing an ERISA plan in order to find "specific, ascertainable damages [the plaintiff] claims to have suffered as a proximate result of [the defendant's conduct]" such as the contract claim at issue there). Given the striking similarity to an appropriate ERISA equitable action set forth by the Supreme Court in Harris Trust, its precedent must control here.

Because ERISA preempts Plaintiffs' state law claims, Plaintiffs' unjust enrichment claim should be dismissed.

### B. ERISA § 502(a)(3) Claim

Defendants further argue that Plaintiffs' fail to state a claim under ERISA § 502(a)(3) because they have not alleged that Defendants "knowingly" participated in Barry Stokes' fraud as required for a claim under § 502(a)(3). Plaintiffs respond that the facts of the amended complaint do allege constructive knowledge by the Defendants, and that the facts showing constructive knowledge satisfy the pleading requirements for such a claim.

In Harris Trust, the Supreme Court examined the elements required for a claim under ERISA § 502(a)(3) against a non-fiduciary, particularly the knowledge element. The Court noted that a transferee of ERISA plan funds could be held liable if it "knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust." Harris Trust, 530 U.S. at 251 (emphasis added). The Court went on to note that "the transferee must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." Id.

As noted above, the Court looked to the common law of trusts for evaluating an ERISA § 502(a)(3) claim. In elaborating on the concept of constructive knowledge, the Court noted:

-10-

> Importantly, that a transferee was not "the original wrongdoer" does not insulate him from liability for restitution. It also bears emphasis that the common law of trusts sets limits on restitution actions against defendants other than the principal "wrongdoer." Only a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust. Translated to the instant context, the transferee must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful.

Id. (citations omitted); see also In re Cannon, 277 F.3d 838, 854 (6th Cir. 2002) (noting the Supreme Court applied common-law principles in its interpretation of ERISA). Further, the Restatement (Second) of Trusts describes the knowledge element as follows:

> A third person has notice of a breach of trust not only when he knows of the breach, <u>but also when he should know of it; that is when he knows facts which under the circumstances would lead a reasonably intelligent and diligent person to inquire whether the trustee is a trustee and whether he is committing a breach of trust</u>, and if such inquiry when pursued with reasonable intelligence and diligence would give him knowledge or reason to know that the trustee is committing a breach of trust.
>
> Whether a third person who deals with one who is in fact a trustee should inquire whether he is a trustee and whether a breach of trust is being committed, and if so the extent of the inquiry which he should make, depends upon the circumstances.

Restatement (Second) of Trusts § 297 (emphasis added).

In the amended complaint, Plaintiffs allege that Defendants had knowledge that Stokes was commingling ERISA plan funds and had possibly embezzled their plan assets. Knowledge of such illegal behavior that is alleged by the Plaintiffs could, if proven, give rise to Defendants having constructive knowledge of Stokes' illicit transfer in violation of ERISA.

The Defendants' protestations that they were not at fault here and had no real knowledge of the specifics of the fraudulent transfer are also unavailing at the motion to dismiss stage. While Plaintiffs have not alleged that Defendants knew of the Heritage Plan or its plan assets

-11-

specifically, Plaintiffs have alleged facts that give rise to possible constructive knowledge that would entitle Plaintiffs to equitable relief under ERISA § 502(a)(3). While discovery may bear out a different result, the Court cannot evaluate the disputed facts at this stage of the litigation. "[A] nonfiduciary's knowledge of the breach can be inferred from surrounding circumstances raising a reasonable inference of knowledge," and Plaintiffs have properly alleged surrounding circumstances that create such an inference here. Brock v. Hendershott, 840 F.2d 339, 342 (6th Cir. 1988).

Finally, the Court is mindful of the Supreme Court's dicta in Harris Trust regarding the burden of inquiry for transferees in the ERISA context. The Supreme Court stated:

> We note, however, that our interpretation of § 502(a)(3) to incorporate common-law remedial principles does not necessarily foreclose accommodation of Salomon's underlying concern that ERISA <u>should not be construed to require counterparties to transactions with a plan to monitor the plan for compliance with each of ERISA's intricate details.</u> While we have no occasion to decide the matter here, it may be that such concerns should inform courts' determinations of what a transferee should (or should not) be expected to know when engaging in a transaction with a fiduciary.

Harris Trust, 530 U.S. at 252. Whatever the ultimate threshold that would establish constructive knowledge on the part of the Defendants in this matter, such a factual finding is inappropriate at this stage of the litigation. As such, the Defendants' motion to dismiss the Plaintiffs' ERISA claim should be denied.

For the reasons stated above, the Court concludes that Plaintiffs' state law claim against the Defendants should be dismissed. The Court further concludes that Plaintiffs have stated a viable claim against the Defendants under ERISA § 502(a)(3).

An appropriate order is filed herewith.

ENTERED this the 10th day of May, 2009.

_____
WILLIAM J. HAYNES, JR.
United States District Judge